May it please the court, good morning. It is an honor and pleasure to be here before you all, and I share in Justice Huck's appreciation of the weather and the relief from the heat. I appreciate getting promoted to justice. There you go. My pleasure. My name is David Cadanese, and I'm here on behalf of the appellant Brandon Smith with respect to a ruling made by the trial court finding as a matter of law that his act in harming himself under the circumstances was a superseding intervening cause. And under the findings in this case, I don't believe any of those can be found, and if there is an argument to find any of those, it is at best a question of fact that should have not been considered only by the court and left to the jury. The trial court should have remanded this to state court and let the state law claim proceed. If intervening superseding was something that could be factually supported, then it should have been left for the jury to decide. This was police who were trained in dealing with an EDP. So what's the alleged duty here? The alleged duty is to follow protocol and procedures when dealing with an emotionally disturbed person, to act reasonably based on their training, to do those things that they are trained to do so that what happened in this case wouldn't happen. It's ironic that one of the... So the duty arises from the training that they receive as police officers when they're supposed to work or confront people who are mentally disturbed? Absolutely, especially as first responders, Your Honor. They're specifically trained not just to do the right thing, but they're trained not to do the wrong thing. And this is embedded in the post program? It is embedded in the post program. It is something that is not only embedded in the post program, but based on the testimony at trial, is something that officers receive training on every several years. And in light of the fact that, unfortunately, in our society today, these officers are the first responders. So the negligence claim is based on the theory that there was the owed a duty to exercise reasonable care according to the standards? Correct, Your Honor. They've been taught when confronting Mr. Smith? Correct, Your Honor. And what I find remarkable in this case is one of the tenets of something being intervening and superseding is that it can't be foreseeable. Yet what my client did was exactly what would have been expected based on the training of these officers. They're taught to give them distance, to not yell countercommands, to not aggravate or accelerate the situation where the person may harm themselves. If you're not to take acts that are designed to prevent someone from harming themselves, then them harming themselves is thereby foreseeable. If I remember this correctly, the district court cited and relied on a case, Arizona State decision called Tose-Cohart? Correct, Your Honor. And Pompaneo? Correct, Your Honor. Why don't – why did he err in relying on those cases? Those cases dealt with different acts of negligence and causation. In those cases, it was alleged that the conduct of the defendant created the underlying mental state that caused the suicide. That's not what we've alleged here. The defense or the appellee in this case is locked onto that. What the district court said, as I understand it, is that generally speaking, generally, suicide is an intervening, superseding intervening cause. Absolutely. Generally speaking. Absolutely. Okay. And then these cases point to the instance where it's alleged or established that the defendant caused the condition that led to the suicide. Correct. Arizona courts say, well, if you can prove that, you're okay. The district court here seemed to say, you must prove that. Correct, Your Honor. And I don't believe that's accurate. That's not what those cases say? They don't at all. That's why it is a general rule. And if that is your underlying – it goes to basically the heart of the defense's case, which is legally flawed. And that is in any instance, when someone harms themselves, that is automatically a superseding intervening cause. And that's just not accurate. Regardless of what the conduct is, if you're going to call it superseding intervening, you've got to meet three prongs. It has to be unforeseeable, it's got to be extraordinary, and it has to occur after the alleged negligent act takes place. That's your criteria. Whether a suicide fits those three is going to be fact-dependent, which is in this case. And I believe the district court followed the general rule without taking into consideration the exact fact in this case is to take this case out of that area of law into basic causation and the basics of superseding intervening cause. It is not a difficult concept to grasp. And when the facts in this case are applied to it, at best, it's a question of fact. From my position, I don't even think it's a question of fact. I think when you are told, don't engage in this type of conduct because someone will harm themselves, and you're in that situation and you do those things and the person harms themselves, it is by definition foreseeable. And once it's foreseeable, regardless of whether you want to call it a suicide, a genocide, a euthanasia, whatever you want to call it, if it doesn't meet all three of those prongs, it can't be a superseding intervening cause. And that's what you had here in this case. This is one case in which I believe the trial court overstepped its bounds and took away something from the jury. It was the jury's right to hear. If this really was a superseding intervening cause, it should have been addressed at the trial court. There should have been an instruction on it so the jury could have done it then. We know for a fact that there are issues of fact in this case that reasonable minds can differ on because you had two things in this case. One, you had a hung jury on the state negligence claim. But there was also a special interrogatory in this case because if you've read the facts, one of the issues is whether my client was told to stand up. And then when he stands up, he gets plugged with what he believed was a live shotgun. It ended up being a bean-bowling rag. But he is – force is used against him for complying. And in this case, that instruction was submitted to the jury as to determine one way or the other whether they could find that my client was told to stand up. And they couldn't one way or the other. So that is still a critical issue of fact that would preclude an intervening superseding cause as well. The other issue is with the attorney's fees. I'm going to rest on my briefs that it doesn't apply, and I believe the reason it really shouldn't apply in this case is they have not won on the State law claim that this should go back to – the trial court should be reversed. And it should be instructed to remand this court back to State court because we've only got a State claim remaining. There's no Federal issue to be decided. That was decided in the defense verdict, unfortunately. Was it removed from State court? I don't believe so. I think I filed initially in Federal court. It's been so long, Your Honor. I believe I filed initially in Federal court because I had the 1983 claim. You may want to leave it in Federal court because you might have statute of limitations problems. I don't know what the tolling – back to tolling, but, you know, Federal court has spent quite a bit of time with this case, and there was clearly supplemental jurisdiction, so. Absolutely, Your Honor, and I believe you were on our first panel, so thank you very much. I'll reserve the remainder of my time unless there's any questions. I'm kind of curious. I tend to agree with your analysis. The judge below drew a bright line, which I'm not sure can be drawn based on Tosi and the other two cases in Arizona. But twice he said that you didn't argue that. You didn't try to distinguish. I think he said deal with those three cases. Well, I believe I had dealt with them, and I believe in reading them that their lack of applicability to this case, that the fact that they're not similar is so striking that this was not those cases. While I didn't directly deal with it, I believe the Court on its own should have realized that those cases had nothing to do with each other. As a district judge, trial judge, I always appreciate when I get all the argument that's appropriate. Thank you, and I will keep that in mind. Thank you very much. Appreciate your time. Okay. You've got some time for rebuttal. We'll hear from the appellees. Good morning, Your Honor. My name is Randy Jew. I'm Assistant City Attorney with the City of Chandler. I'll start with the fact that there is a duty that the officers had of public safety, and that their job was to ensure the safety of the public in engaging and dealing with Brandon Smith. Unlike the bus driver, there was a duty. You're just dealing with foreseeability? That's correct. I mean, even though you, obviously, in the case of negligence, you have a duty, you have to prove breach of duty, but then there's the issue of causation, and that's really what this case is all about. And in proximate cause, you can have an intervening factor that becomes superseding, and that's the situation here. The Arizona case law says that you have to, if the potential negligent actor is not responsible for causing the mental illness from which the harm occurs, then that is a superseding factor. I don't read the case to say that. I read the case to say that one of the ways you can prove negligence in But it seems to me it's another matter to say that's the only way you can prove liability. And even the Tosi case discussed duty and foreseeability. In that case, a bus driver who runs into the back end of this lady's vehicle actually had no duty with regard to potential suicide. Obviously, it was not foreseeable that from an accident on the street could result in someone who had an underlying mental condition would later on have that condition worsen and she would take her life. So it was not foreseeable under those circumstances. I think it's a much greater convention to say that that's the only way you can prove liability. Well, I think that the issue of foreseeability is much clear-cut in the Tosi case because it's a bus driver. Obviously, a bus driver doesn't know that when he hits another driver that if that driver has a mental illness that that might subsequently lead to a suicide. Well, let me ask you this. There were six training features that the police officers were trained in with regard to dealing with someone who was emotionally disturbed, right? And they're outlined. I can't think of all. There were six of them. And I think the testimony at trial was each of those six had been violated. Now, conflicting testimony, but at least there's testimony the jury could accept. Isn't the existence of that training saying you've got to do this or not do this when you're dealing with an emotionally disturbed person because if you do this or you don't do this, bad things can happen, such as harming themselves, harming someone else. So isn't that the essence of foreseeability? No, the essence of the foreseeability is the question here. I mean, the reason why you have the rule in place that if you do not cause the mental illness is because mental illness is unforeseeable. And even though these officers are trained to deal with and engage with emotionally disturbed people, there is still always going to be a factor that is unforeseeable, that's unpredictable. And I think in this case Let me stop you there. How can it be unforeseeable, suicide being unforeseeable, when police officers are called to the scene and advised this man is mentally ill and he's threatening to commit suicide? How is that not foreseeable? Because, Your Honor, it's true that if you look at this case, I think it's an illustration of why it's unforeseeable. The facts of the case show that the police and the dean, the father, whose house Brandon Smith went to, he knew that Brandon Smith said to his father, people are after me. He didn't say who the people were. He went and got a knife, and he refused to give up the knife. He said that he told his father, I need the knife to keep me safe. Now, your interpretation of that and my interpretation would be that I need a knife to protect myself because I'm in fear of people coming and attacking me. It suggests that he would use the force against someone else. The 911 phone call by Marcy, the stepmother, was that he had a history of resisting force, resisting police. He has a history of suicide. Those are two different things. Resisting force means that he might take action against a third party, the police. Suicide, he may do harm to himself. So the police, when they arrive at the scene, they don't really know what is going to happen. That's not all she said, was it? Those were the main things that she said. She also testified, and the father testified, that Brandon Smith had not told them that he intended to harm himself. But here's where this is. Wasn't there a dispatch to the officers? Yes. And didn't they say this was a suicide call? Yes. Well, they said no. They said the call to dispatch was that it's a potential suicide call or it's a 911. But this is where there's a critical part of the record that's very important that shows that. Now, I understand your point, Your Honor, is that the police knew to a certain extent. They knew. They knew that they were going to be dealing with an emotionally disturbed person. But they didn't know the persecutory delusion that Brandon Smith was operating under. The delusion was the Constitution had been changed and that the police had been told to round up political dissidents. So you're suggesting if they'd known the details of the delusion that they may have had foreseeability. It would have given them more foreseeability as to what action. You say more foreseeability. That sounds like kind of a qualitative or quantitative amount. When does it become enough to send it to the jury? That's what we're talking about, isn't it? Right. But, Your Honor, the question is, the policy question is that it's unfair. We are asking the police to engage with emotionally disturbed people. And it's a very difficult position to be in. And it would be unfair to ask the police to do that job and then also be responsible for all of the fact that a mental illness might cause this person to commit suicide. And the police here did not know that he was operating under this. I agree with you. Very difficult job. I would not want to have that job myself. I have a much easier job. That is their job. And they're given a suicide call. They're trained not to do at least or to do at least six different things, which the testimony may be conflicted, but still the testimony was they violated each of those six. Are you saying the public policy now prohibits, even though you conclude that under other circumstances, it would be foreseeable that this man would commit suicide, but because of a policy that we should adopt or that Arizona has adopted, that is a bright line that he can never be held responsible if the end result is a suicide? Is that your argument? No, my argument, Your Honor, is that if you show that they had a duty and if you show that they breached that duty, that they failed to do what they were supposed to do, no, they are not, they should not be held liable for a suicide or attempted suicide based on a mental illness that they did not cause because it's unfair on the officers in this case because it's unforeseeable. What happened in this situation was completely unforeseeable. Brandon Smith had this persecutory delusion that the police were going to come take him away. The father didn't know that. The stepmom didn't know that. That wasn't conveyed to the 911 operators. The police did not know that. Ironically, the father basically had substantiated the delusion by calling the police. Nothing that the police did on that night, as far as going out and approaching Brandon Smith, basically played into exactly what his fear was, was that, as it turned out, he was going to stab himself rather than be taken away. That was not. Your Honor, it's important to keep in mind that when we're talking about suicide, as a proposition, there's lots of different reasons that people can commit suicide, and that's why we have that rule that if the negligent actor has not caused the mental illness from which the suicide or attempted suicide in this case occurred, that there is not liability for the harm. Well, hold on a second. But they knew, and I don't want to repeat this, but it seems pretty clear that the officers knew that they had a suicide call. Well, they knew that they had a potential suicide call based on information that he was suicidal. Doesn't that kick in sort of all the training that they've had? It does kick in the training that they had and the training. I mean, there's dispute, obviously. There's a dispute over whether the training, you know, what training applied and whether they had this training at post. I mean, that was a disputed fact. But the important thing is that the officers are not liable as a matter of law if the mental illness is what caused the suicide or the suicide attempt. Let me change the facts a little bit, hypothetically. Let's assume all the same facts, and I think you earlier said the officers arrived at the scene, they didn't know whether he was going to commit suicide or maybe harm someone else, right? Correct, Your Honor. All right. New fact. I'm standing next to this man. Instead of stabbing himself, he stabs me because he shot the beanbag and reacts. Is there a liability to me? Was that foreseeable? Okay, so who's, I'm sorry, who's the one? I'm with Bysander or Mr. Dean, for example. Okay. Mr. Dean. Mr. Dean, standing close to his stepson, gets stabbed after the beanbag and all the shouting and telling him to stand up when he's already standing up. He gets confused, and in his confusion, stabs me, Mr. Dean. So in this case, Brandon Smith stabs his father, you're saying. His stepfather, right. Is there a liability? Is that foreseeable? In that case, if no. Well, that would not be necessarily foreseeable. No, that would not be a foreseeable action. So in the mental illness, you're saying that he, if Brandon Smith is taking action out of his mental illness and ends up stabbing his father, no, that would not be. Because, again, it's still what we're talking about is foreseeability. And people who are mentally ill are not foreseeable. That's really the problem. What you're saying is it's not foreseeable that someone who has a severe mental illness, as he did, obviously delusional, who has threatened suicide, who has a knife in his hand to his throat, it's not foreseeable that he might stab himself or his stepfather? It's not foreseeable. It's not foreseeable what he's going to do. In fact, it's unforeseeable. The crux of this case, the crux of the rule, is that mentally ill people, it's not foreseeable. If it's not foreseeable, why do we have all this training to do certain things, which at least the record shows, at least it's a disputed fact, as to whether they violated those rules? Well, the training. Your Honor, that's the. No, no, no. That's the exact purpose. The training goes back to the reason why. Our society, unfortunately, is filled with mentally ill people, and the front-line people are the police. And the police do have a duty to the best of their ability to ensure the public safety. The training is so that they can fulfill that obligation of public safety. And it's not as if the police are not. For example, this case also showed the police are not unfettered in what they can do. There was a Section 1983 claim. Everyone, all of us are aware of that even police officers can go so far as to incur criminal liability. There's definitely, there's parameters, and there are boundaries to what the police can do. But what this is is really a limited thing. So the police, though, should not, they, what we've decided is that it is just to limit liability for actions by someone who is mentally ill. If the police had caused the mental illness, then that's. So what you're saying, under no circumstances, even though it's foreseeable, in the true sense of the word, in the factual sense of the word, that public policy says cannot be, as a matter of law, foreseeable, even though factually it's foreseeable because of public policy, which protects the police officer in a very, very, admittedly very difficult situation. Is that your argument? No, my argument, Your Honor, is it's foreseeable that something might happen. But it is unforeseeable how that may happen. And what the police, if you want to really look at this, if you, remember, is it's unforeseeability and in hindsight extraordinary. What Brandon Smith's delusion was that the Constitution had been changed, that the police had been told to round up people is extraordinary. And in hindsight, the police were probably the wrong people to approach Brandon Smith on that. I mean, in fact, there were facts in the record that there may have been an attempt by the father and the mother-in-law to contact community bridges, which is. The stepmother, not the mother-in-law. I'm sorry, the stepmother. Thank you, Your Honor. They made attempts to contact an organization who deal with mentally ill people. If they had been available and showed up, maybe nothing would have happened because the persecutory delusion was that Brandon Smith was after, that the police had been sent after him. And so, you know, the fact that the police showed up just completely substantiated his delusion. And the police had no idea about that. I mean, this is just one example, but I think there's just so many different variations where mentally ill people can do all sorts of things. And even his delusion itself made no sense because he said political dissidents like Schindler's List. Well, that's not a political dissident case, right? I mean, that's a Holocaust. That's part of the Holocaust story. So that also shows you how, you know, these delusions can take all a variety of forms. Okay. Thank you. Thank you, Your Honor. You had a few minutes for rebuttal, if you'd like to use them. The only thing I'd like to say, Your Honor. Well, wait until you get up here so everybody can hear you. That's a trial order. Thank you, Your Honors. Mental illness isn't unforeseeable. Probably at any time in our country's history, it's as foreseeable now as ever. Unfortunately, we see it on our streets every day. It is unfortunate these officers have to deal with these situations. But sorry it's hard. When it's hard, you have to do it well. You have to rely on the training. I think what everyone here, and he was even conceded by the defense, it's absolutely foreseeable that someone who, and by the way, so we're clear, Mr. Smith did tell the officers, it's an excerpt of record, page 44, lines 4 through 11, he told the officers, my son's paranoid. That's a specific connotation. But if I have somebody that's paranoid, that's looking at me, that's not trying to harm themselves, that's holding a knife to their throat, common sense tells you it's foreseeable that if I rush them, if I scream at them, if I escalate the emotions, that they are likely going to harm themselves. I believe it's a tenant of Arizona law as it is every other law that causation and foreseeability isn't foreseeing that exact conduct play out in that exact manner. It's whether under the situation it was foreseeable that he would harm himself or someone else. Absolutely. In fact, they were trained that if they did what they did, shoot him when he's trying to comply, scream at him, which they admit they did, corner him and not give him space, which they admit they did, all of those things, you're going to look at this and go, my God, you're going to set him off. So, counsel, what's your response to opposing counsel's position that they didn't know specifically what his delusion was regarding the government coming for him? I agree, and they're going to be in that situation every time. But what they're trained to do is to deal with those situations when they don't know because everything they were taught to do and everything that they didn't do in this case was to bring that situation down, to give that person time to think, to make sure they're safe. All of those things. Our client even said, and for matters of this court's review should be taken as true, he says, I didn't know what I was doing. I was hoping they were here to help me, but when I complied and stood up and they started shooting at me, it let me know that they weren't there to help me. Had these officers just followed their training, treated him like a human being and not a thing, and stepped back and did what their training told them, this would have ended safely. But when you start shooting at someone that's already scared. It's difficult when somebody's holding a knife to know. It's difficult when someone's holding a knife to know what actually should be done. I think that changes the equation a little. Your Honor, I will challenge that in that you really think if someone's holding a knife, you got a question whether you should charge them abruptly and quickly? I've found over the years that it's really difficult to put yourself in the situation of a police officer. It's easy for us to sit back here in the comfort of a courtroom or the comfort of our offices and second-guess what the police do. But when you're there in the situation and it's split second that you have to make the decision, I don't feel as comfortable saying that the officer should have done this or should have done that because the way he's holding the knife, it's just really difficult for me to say that the officer should have or shouldn't have done something. That's all I'm saying. It's not clear-cut to me, as clear-cut as it appears to be to you. Obviously, no question of that, but that's why a jury should decide it, and it should not have been taken away from the jury in this case. The one thing that wasn't addressed was the fact that one tenant of superseding, intervening, and that's what we're talking here, is the negligent act has to end before the superseding, intervening act can occur, and that's not what happened here. It is that negligent act that was the but for. But for them, doing those things that they were taught would escalate the situation. It did exactly what they were told it would do. It escalated. Counsel, in your view, when did the negligent act that you ascribed to the police, when did that end? After they stopped tasing him, after he put the knife in him. Because they continued to tase him when he had a knife stuck in his neck. He was shot first with the beanbags, then he was tased. He was shot twice, he stabbed himself, and then he was tased. The stabbing was in direct result of, my God, they're shooting at me, I don't want to attack them, but I don't want to die by bullets. So what was the reason for the tasing that was given by the police officers? What was the reason for that? Their safety. All right. And, again, in that situation, I agree with you on that one. I'm not sure. I get it's happening real quick, but no, it's not easy, but sorry, that's your job, and you're trained to do it a certain way. Yeah, yeah, but it's also, you know, we have to decide when liability is imposed and when it's not imposed for doing their job. That's the difficult call. I think that's the jury's call, Your Honor. Okay, thank you. Thank you, counsel. We appreciate your arguments. Safe travels back to Arizona. Thank you.
judges: Paez, Rawlinson, Huck